**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **DESTINY MADISON** | § | |
| | § | **CIVIL ACTION NO.** 3:26-cv-183-DPJ-ASH |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **TIMELY TELEHEALTH, LLC** | § | |
| **d/b/a TIMELYCARE,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

Plaintiff Destiny Madison brings this action for damages and other legal and equitable relief from Defendant Timely Telehealth, LLC d/b/a TimelyCare ("TimelyCare") for violations of Title VII, 42 U.S.C. section 1981, and the Americans with Disabilities Act.

## INTRODUCTION

1. Destiny Madison was a dedicated and successful employee of TimelyCare with no history of performance issues until TimelyCare hired a new manager for her team named Misty Cobb. Ms. Cobb, a white female, immediately began targeting her only two Black subordinates: Ms. Madison and Jerick Pitre. Ms. Cobb fired Mr. Pitre within four months of her hiring, over the objections of other managers on the team, and then set her sights on Ms. Madison. Both Ms. Madison and her white colleagues realized she was being targeted and reported as much to TimelyCare's HR department. This targeting included penalizing Ms. Madison for her ADA-protected leave. Even though a white team lead reported to TimelyCare that he believed Ms. Cobb had an implicit bias against Black people, TimelyCare informed Ms. Madison that her complaints of race discrimination were unfounded and then terminated her employment.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1343(3), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

3. The Court additionally has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as the sum in controversy exceeds $75,000 and the parties are citizens of different states.

4. Venue is proper in this Court under the specific venue provision of Title VII, 42 U.S.C. section 2000e-5(f)(3), because this is the judicial district in which Plaintiff would have worked but for the alleged unlawful employment practice. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. Plaintiff is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, a resident of Jackson, Mississippi.

6. Defendant TimelyCare is a Texas limited liability company that employs more than two hundred people nationwide. It may be served through its registered agent and CEO Luke J. Hejl at 4500 Ranch View Road, Fort Worth, Texas, 76109. TimelyCare will be afforded the opportunity to accept service of process pursuant to Federal Rule of Civil Procedure 4(d). If TimelyCare fails or refuses to accept service of process as requested, then Plaintiff will request service of process pursuant to Rule 4(j).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. All conditions precedent to this lawsuit have been satisfied. Ms. Madison timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission. She received her Notice of Right to Sue from the EEOC on December 8, 2025. The parties executed a tolling agreement as to all filing deadlines relating to Plaintiff's Title VII and ADA claims.

## STATEMENT OF FACTS

8. Destiny Madison began her employment with Defendant TimelyCare in January 2023 as a University Partnership Coordinator ("UPC"). TimelyCare provides virtual health services to colleges and universities across the United States. As a UPC, Ms. Madison was responsible for supporting TimelyCare account executives in obtaining new university contracts for the company.

9. Ms. Madison was a fully remote employee of TimelyCare. She performed all her job functions for TimelyCare from her home in Jackson, Mississippi.

10. For the first eighteen months of her career, Ms. Madison's manager was Aaron Greer. During this time, Ms. Madison received positive feedback about her performance and was a successful member of the UPC Team. She received only favorable performance reviews.

11. After a large restructuring, Ms. Madison and the other UPCs began reporting to Director Misty Cobb (white female) in September 2024. Ms. Cobb was new to TimelyCare at the time she began managing Ms. Madison. Approximately 10-11 total UPCs reported to Ms. Cobb. Ms. Madison was the only Black female UPC. The only other Black UPC was a male named Jerick Pitre.

12. Ms. Cobb was particularly hard on her Black UPCs. This targeting of Black

employees by Ms. Cobb was observed and noted by other employees of TimelyCare.

13. In November 2024, just two months after she started supervising the UPCs, Ms. Cobb placed Mr. Pitre on a PIP. Prior to this PIP, Mr. Pitre had never had a negative performance review at TimelyCare.

14. Ms. Cobb subsequently informed a white UPC Team Lead named David L. Frugé of her plans to fire Mr. Pitre. Mr. Frugé objected to this decision, noting that Mr. Pitre was a good employee and great team player. Ultimately, Ms. Cobb decided to fire Mr. Pitre anyway in January of 2025. Mr. Frugé informed TimelyCare of his belief that Mr. Pitre's firing was motivated by Ms. Cobb's implicit bias against Black people.

15. During this same time period, Ms. Cobb was also targeting Ms. Madison. Ms. Madison's white co-workers began noticing that Ms. Cobb was singling Ms. Madison out for criticism and unfair treatment. Ms. Cobb began speaking poorly of Ms. Madison to other team members.

16. In or about November 2024, Ms. Madison requested and received a reasonable accommodation due to her gallbladder disease. The accommodation included extended lunch breaks for a two-week period and then seven days off work for gallbladder surgery. TimelyCare did not adjust any of Ms. Madison's target metrics or quotas for Q4 in light of her protected leave. When Ms. Madison returned from leave, Ms. Cobb promptly cancelled Ms. Madison's PTO for the Christmas holiday despite it having already been approved.

17. The following month, Ms. Madison was informed by a colleague that Ms. Cobb had referred to her child's teacher, who was Black, as "ghetto."

18. In January 2025, Ms. Madison and her co-worker Lauren Sharpe (white female) went to TimelyCare HR regarding Ms. Cobb. Ms. Sharpe specifically told the HR representative

that she believed Ms. Cobb was targeting Ms. Madison. Ms. Madison also shared her concerns about being singled out by Ms. Cobb. Shortly thereafter, Ms. Cobb gave both Ms. Madison and Ms. Sharpe negative performance reviews, rating them as "below expectations." Ms. Cobb cited Ms. Madison's purported failure to meet quota in Q4 without acknowledging Ms. Madison's medical leave during the same period.

19. After receiving the negative performance review from Ms. Cobb, Ms. Madison went to TimelyCare HR to again complain that she was being treated differently than her peers.

20. On February 20, 2025, Ms. Madison contacted TimelyCare HR regarding her need for an accommodation as a result of continuing gallbladder issues that were impacting her digestion. TimelyCare provided Ms. Madison with the accommodation paperwork and gave her a response deadline of March 6, 2025.

21. However, on March 5, 2025, Ms. Cobb placed Ms. Madison on a "final warning" despite issuing no previous written warning or performance plan. Despite several UPCs receiving a rating of "below expectations," and no UPC meeting their quota in Q4, Ms. Madison was the only UPC placed on a final warning. Even though Ms. Sharpe had just received the same "below expectations" rating on her performance review, she received no disciplinary action.

22. Ms. Madison was informed that she would be fired if she did not meet Ms. Cobb's dictated performance metrics by March 31, 2025. However, Ms. Cobb then immediately began removing Ms. Madison from her assigned territories and re-assigning her to smaller accounts without reducing her quota, thus attempting to ensure that Ms. Madison could not successfully meet the requirements of the final warning.

23. On March 7, 2025, Ms. Madison contacted TimelyCare HR regarding her concerns about Ms. Cobb. Ms. Madison noted in part that Ms. Cobb appeared to be retaliating against her

for her protected medical leave. Ms. Madison was informed that TimelyCare would investigate.

24. On March 11, 2025, Ms. Madison again contacted TimelyCare HR after learning that Ms. Cobb was reassigning her accounts, thus sabotaging Ms. Madison's ability to meet her March metrics. Ms. Madison stated, in part:

> I'm extremely confused and concerned that my manager is secretly redistributing my accounts to other team members without my knowledge, especially knowing that I am on a final warning and cannot afford to lose accounts, particularly those with warm leads. This pattern is identical to how my manager handled Jerick's removal back in January, and I am now experiencing the same treatment. At this point, I am completely uncomfortable and firmly believe that my manager is racially discriminating against me within this team.

25. Ms. Madison also spoke with both the Account Executive she supported and the Regional VP of Sales. Ms. Cobb had claimed that both men had expressed concerns about Ms. Madison's performance. However, when Ms. Madison spoke with them, they both stated that they had no issues or concerns with Ms. Madison's performance. The Regional VP stated that his concerns were about Ms. Cobb, not Ms. Madison. The Account Executive stated that if Ms. Madison had been given the impression by Ms. Cobb that she was not doing a good job, "that pisses me off."

26. Indeed, TimelyCare's own tracking metrics showed that Ms. Madison was not performing below her peers. In Q4 she ranked second in Annual Recurring Revenue, first in scheduling new meetings, and second in meetings held. In March 2025, she had more marketing-qualified opportunities in her pipeline than any other UPC. Ms. Madison's own colleagues believed she was performing well in her role and was a professional, effective, and level-headed UPC. Mr. Frugé, the UPC Team Lead, considered Ms. Madison to be an above-average UPC.

27. Nonetheless, TimelyCare scheduled a meeting with Ms. Madison for March 25,

2025. At that meeting, HR informed Ms. Madison her race discrimination complaint was deemed to be unfounded. They also informed her that she was fired effective immediately. On information and belief, Mr. Pitre and Ms. Madison are the only UPCs to be fired by TimelyCare.

**COUNT I: RACE DISCRIMINATION**
**42 U.S.C. §§ 2000e et seq. ("Title VII")**

28. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

29. Plaintiff was employed by Defendant within the meaning of Title VII.

30. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

31. Defendant violated Title VII when it terminated Plaintiff's employment because of her race, Black.

32. Plaintiff suffered damages as a result of Defendant's illegal conduct.

33. Plaintiff's requests for relief are set forth below.

**COUNT II: RACE DISCRIMINATION**
**42 U.S.C. section 1981 ("Section 1981")**

34. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

35. Plaintiff had a contractual employment relationship with Defendant.

36. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

37. Defendant violated 42 U.S.C. section 1981 when it terminated Plaintiff's employment because of her race, Black.

38. Plaintiff suffered damages as a result of Defendant's illegal conduct.

39. Plaintiff's requests for relief are set forth below.

**COUNT III: RETALIATION**
**42 U.S.C. §§ 2000e et seq. ("Title VII")**

40. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

41. Plaintiff was employed by Defendant within the meaning of Title VII.

42. Plaintiff engaged in protected activity under Title VII when she complained that she was being discriminated against on the basis of her race, Black.

43. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

44. Defendant violated Title VII when it terminated Plaintiff's employment because of her protected activity.

45. Plaintiff suffered damages as a result of Defendant's illegal conduct.

46. Plaintiff's requests for relief are set forth below.

**COUNT IV: RETALIATION**
**42 U.S.C. section 1981 ("Section 1981")**

47. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

48. Plaintiff had a contractual employment relationship with Defendant.

49. Plaintiff engaged in protected activity under section 1981 when she complained that she was being discriminated against on the basis of her race, Black.

50. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

51. Defendant violated 42 U.S.C. section 1981 when it terminated Plaintiff's employment because of her protected activity.

52. Plaintiff suffered damages as a result of Defendant's illegal conduct.

53. Plaintiff's requests for relief are set forth below.

**COUNT V: DISCRIMINATION**
**42 U.S.C. § 12101 et seq. ("The ADA")**

54. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

55. Plaintiff has a disability as defined under the ADA, meaning that she has: (A) a physical impairment that substantially limits one or more of the major life activities; (B) a record of such an impairment; or (C) was regarded as having such an impairment.

56. Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

57. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

58. Defendant violated the ADA when it terminated her employment because of her disability.

59. Plaintiff suffered damages as a result of Defendant's illegal conduct.

60. Plaintiff's requests for relief are set forth below.

**COUNT VI: RETALIATION**
**42 U.S.C. § 12101 et seq ("The ADA")**

61. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62. Plaintiff engaged in protected activity under the ADA by notifying Defendant of her disability, requesting a reasonable accommodation, and/or taking leave for her disability under the ADA.

63. Plaintiff suffered an adverse employment action when her employment was terminated by Defendant.

64. Defendant violated the ADA when it terminated Plaintiff's employment because of her protected activity.

65. Plaintiff suffered damages as a result of Defendant's illegal conduct.

66. Plaintiff's requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

A. A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII, 42 U.S.C. §§ 2000e et seq., the ADA, 42 U.S.C. § 12101 et seq., and 42 U.S.C. section 1981;

B. All damages which Plaintiff has sustained as a result of Defendant's conduct, including back pay, compensatory damages, and job benefits she would have received but for Defendant's discriminatory practices;

C. Reinstatement or, in the alternative, front pay;

D. Punitive damages;

E. Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

F. Pre-judgment and post-judgment interest, as provided by law;

G. That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

H. Granting Plaintiff other and further relief as this Court finds necessary and proper.

Plaintiff also seeks injunctive relief, including, but not limited to:

I. Training on the subject of Title VII, the ADA, and Section 1981 for all of Defendant's employees;

J. Supervisory discipline up to and including termination for any supervisor who engages in unlawful Title VII, ADA, and/or Section 1981 discrimination or retaliation;

K. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief.

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: March 19, 2025

RESPECTFULLY SUBMITTED,

BY:__________________________________
**CHRISTOPHER W. ESPY, MSB #102424**

OF COUNSEL:

CHRISTOPHER W. ESPY, MSB #102424
**ESPY LAW, PLLC**
320A Edgewood Terrace Drive
Jackson, Mississippi 39206
Telephone: (601) 987-0000
Facsimile: (601) 510-9050
Email: chris@espylaw.com

MELISSA R. HOLMAN
Texas State Bar No. 24064501
**The Holman Firm PLLC**
1005 Congress Ave., Suite 925
Austin, Texas 78701
Telephone: (512) 287-5091
Facsimile: (512) 287-5092
mholman@holmanfirmpllc.com

(Pro Hac Vice Application Forthcoming)

**COUNSEL FOR PLAINTIFF**